Honorable Marc Barreca
Hearing date: May 28, 2015; 1:30 p.m.
Hearing Place: Room 7106, 700 Stewart Street, Seattle, WA 98101
Responses due by: May 20, 2015; by 4:30 p.m.

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re:<br><br>TREND SOUND PROMOTER AMG CORP.,<br><br>　　　　Debtor(s). | Chapter 7<br>Bankruptcy No. 14-13193 |
| BANKRUPTCY ESTATE OF TREND SOUND PROMOTER AMG CORP., by and through Nancy James, Bankruptcy Trustee,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>VOLODIMYR PIGIDA and JANE DOE PIGIDA, husband and wife, and the marital community comprised thereof, individually and as trustee of the Lakeshore Enterprises Trust; and MARINA BONDARENKO and JOHN DOE BONDARENKO, wife and husband, and the marital community comprised thereof, individually and as trustee of the Lakeshore Enterprises Trust, and SOUNDT STUDIOS LLC, a Washington limited liability company,<br><br>　　　　Defendants. | Adversary No. 14-01248<br><br>MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER OF PARTIAL SUMMARY JUDGMENT |

**MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER OF PARTIAL SUMMARY JUDGMENT**
150326iMem   Page 1

THE RIGBY LAW FIRM
600 Stewart Str. #1908
Seattle, WA 98101
(206) 755-7600

Case 14-01248-MLB   Doc 40   Filed 04/30/15   Ent. 04/30/15 09:54:30   Pg. 1 of 15

COMES NOW the plaintiff, Bankruptcy Estate of Trend Sound Promoter AMG Corp., by and through Nancy James, Bankruptcy Trustee, through counsel, The Rigby Law Firm, and James Rigby, and files this Memorandum in Support of Motion for an Order of Partial Summary Judgment.

## I. RELIEF REQUESTED

The trustee seeks an order of partial summary judgment based upon the facts set forth in the motion concerning which there is no genuine dispute. The trustee seeks an order of partial summary judgment which orders that the estate has proven the elements of its preference claim against the defendants, except for the insolvency element. The trustee has not brought the motion with respect to the solvency issue because the defendants could reasonably argue that they require additional time to respond on that issue. Soon, that argument will not be available as the defendants have recently been provided with a copy of the debtor's server and soon will have had ample time to conduct their own solvency analysis.

## II. THE DEBTOR'S BUSINESS: November 2012 to April 2014

Trend Sound Promoter AMG Corp. (hereinafter "Trend Sound" or "Debtor"), began doing business in November 2012, according the debtor's answer to Statement of Financial Affairs[1] (hereinafter "SOFA") question number 18. Defendant Volodimyr Pigida (hereinafter "Pigida") was the President and 80% owner.[2] Defendant Marina Bondarenko (hereinafter "Bondarenko") served

---

[1] In re: Trend Sound Promoters AMG Corp., Petition for Bankruptcy and Bankruptcy Schedules (hereinafter "Bankruptcy Schedules") SOFA 18, Docket 1, page 32.

[2] SOFA 21b., Docket 1, page 34.

**MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER OF PARTIAL SUMMARY JUDGMENT**
150326iMem   Page 2

THE RIGBY LAW FIRM
600 Stewart Str. #1908
Seattle, WA 98101
(206) 755-7600

Case 14-01248-MLB   Doc 40   Filed 04/30/15   Ent. 04/30/15 09:54:30   Pg. 2 of 15

as the Vice President[3] at the inception of Trend Sound through March 2014.[4] Pigida likewise continued in his office as President until this instant bankruptcy was filed.[5]

Pigida and Bondarenko are also the controlling members of an entity named SoundT Studios, LLC. (hereinafter "SoundT")[6] to which the defendants and the debtor's records also refer by variations of its name including "Soundtrack Studio, LLC," "Sound Track Studio, LLC," "SoundTrack Studio," and "Soundtrack."

Pigida describes Trend Sound's business model which intimately involves SoundT:

> "Trend Sound Promoter AMG, Corp. [hereinafter "TSP"] entered into a distribution agreement with Soundtrack Studio [*sic.*] in 2012. The distribution agreement granted TSP the right to license music owned by Soundtrack Studio, LLC [*sic.*] for resale. As part of that distribution agreement, TSP was to pay Soundtrack [*sic.*] a quarterly licensing fee. The fee was calculated quarterly based upon a certain percentage of revenue TSP generated from the sale of licensing agreements. Additionally, the distribution agreement authorized SoundTrack Studio [*sic.*] both to assign the licensing fee to whomever it chose and to delay payment of the quarterly fee if it chose to. The funds that were transferred were licensing fees owed to Soundtrack Studio, LLC [*sic.*] from quarterly licensing fees that had accrued during 2013."[7]

---

[3] SOFA 22b., Docket 1, page 35.

[4] Plaintiff's First Interrogatories With Answers and Objections Thereto–Marina Bondarenko individually, No. 3. *See,* Declaration of James Rigby In Support Of Plaintiff's Motion For Partial Summary Judgment, Exhibit D (hereinafter "Rigby Dec., Exhibit D, page 35").

[5] Plaintiff's First Interrogatories With Answers and Objections Thereto–Pigida individually, Rigby Dec., Exhibit F, page 59.

[6] Washington State Secretary of State corporate records. *See,* Rigby Dec., Exhibit M, page 132.

[7] Rigby Dec., Exhibit F, page 60.

**MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER OF PARTIAL SUMMARY JUDGMENT**
150326iMem   Page 3

THE RIGBY LAW FIRM
600 Stewart Str. #1908
Seattle, WA 98101
(206) 755-7600

Case 14-01248-MLB    Doc 40    Filed 04/30/15    Ent. 04/30/15 09:54:30    Pg. 3 of 15

The License Agreement required Trend Sound to pay SoundT 20% of all revenue for the sale of the licensed products.[8] While the license provided the payments were to be on a quarterly basis, it also provided that the parties could agree upon different terms.[9] The invoices from SoundT to Trend Sound in fact required payment upon receipt.[10] The License Agreement also authorize SoundT to designate an assignee of its payments and the payments were assigned at least 23 separate times.[11]

Pigida also describes the most significant preferential transfer in his answer to Interrogatory Number 8:

> "On or about January 20, 2014, SoundTrack Studio, LLC [*sic.*] assigned $1,454,448.11 of licensing fees owed to Ticor Title.[12] The purpose of the assignment was to purchase the subject property. The subject property is used as a studio, office and residence. Soundtrack Studio, LLC [*sic.*] uses the lower half of the property as an office/recording studio. The upper portion is used as a personal residence by Volodimyr Pigida. The arrangement was agreed to by Pigida and Soundtrack Studio, LLC [*sic.*]. Because Soundtrack Studio [*sic.*] had delayed payment of some of its licensing fees that accrued in 2013, the amount assigned to Ticor Title was due and owing at the time of the assignment."[13]

This is the transaction which catalyzed the filing of the instant complaint immediately after the matter was converted to a Chapter 7 proceeding, as the trustee was most reasonably concerned that assets were being transferred beyond the reach of this Court.

---

[8] Rigby Dec., Exhibit L, page 127, paragraph 4.

[9] Id.

[10] Id.

[11] Rigby Dec., Exhibit N, pages 134, 136, 145, 147, 149, 151, 153, 155, 158, 160, 163, 165, 168, 170, 172, 174, 177, 179, 184, 186, 188, 190 and 192.

[12] Rigby Dec., Exhibit N, page 188.

[13] Rigby Dec., Exhibit F, page 62.

**MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER OF PARTIAL SUMMARY JUDGMENT**
150326iMem   Page 4

THE RIGBY LAW FIRM
600 Stewart Str. #1908
Seattle, WA 98101
(206) 755-7600

Case 14-01248-MLB    Doc 40    Filed 04/30/15    Ent. 04/30/15 09:54:30    Pg. 4 of 15

Title to the subject property was taken in the name of Lakeshore Enterprises Trust. Once again, Pigida[14] and Bondarenko[15] controlled the entity, in this instance as the trustees. Bondarenko described her role in the transaction in her answers to interrogatories:

> "I served as co-trustee in the purchase of the subject property by Lakeshore Enterprises Trust. Volodimyr Pigida selected the property. He told me that he selected the property because it could serve as a recording studio and a residence. Furthermore, Volodimyr Pigida told me that he had the funds transferred to Lakeshore as the assignee from Soundtrack Studio, LLC [*sic*.]"[16]

Pigida also describes the purchase of the Lakeshore property in his answers to interrogatories:

> "When the property was purchased, the parties agreed that Lakeshore Enterprises Trust would purchase the property in order to allow Soundtrack Studio, LLC [*sic*.] to use the ground floor of the property as an office/recording studio with the upper portion of the property used as a residence by Volodimyr Pigida. Soundtrack Studio [*sic*.] and Pigida had decided in June of 2013 that the rental costs associated with renting a recording studio for Soundtrack [*sic*.] to use were too high. By entering into the agreement to have a property that can be used both as a recording studio and a residence, Pigida and Soundtrack Studio, LLC [*sic*.] anticipated that their overall costs, i.e. costs of renting a residence and a recording studio, would decrease. <u>Lakeshore Enterprises Trust was merely the vehicle through which the property was purchased</u>." Emphasis Added.[17]

Pigida states more than once that SoundT "assigned" the funds used to purchase the property, but he never says that any consideration was paid to SoundT in exchange for the assigned funds.[18]

---

[14] Plaintiff's First Interrogatories With Answers and Objections Thereto–Pigida as Trustee, No. 1, *See,* Rigby Dec., Exhibit E, page 48.

[15] Rigby Dec., Exhibit D, page 34.

[16] Rigby Dec., Exhibit C, page 24.

[17] Rigby Dec., Exhibit E, page 51.

[18] Rigby Dec., Exhibit E, page 50, line 8; and, Exhibit F, page 62, line 8; and, page 63, line 13.

---

**MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER OF PARTIAL SUMMARY JUDGMENT**
150326iMem   Page 5

THE RIGBY LAW FIRM
600 Stewart Str. #1908
Seattle, WA 98101
(206) 755-7600

It is reasonable if not compelling to infer that Lakeshore Enterprises Trust paid no consideration. Lakeshore Enterprises Trust was in actual fact merely a vehicle to hold the property.

The defendants' answers to interrogatories go on to explain their version of the debtor's descent into bankruptcy after the $1.5 Million transfer to purchase the waterfront condominium. They relate that the Bank of America closed their bank accounts in mid-March, based upon numerous anonymous complaints about the debtor's business practices.[19] Thus they were unable to continue in business.

The defendants state they were solvent until the Bank of America closed their bank accounts.[20] This opinion, however, seems to only consider the cash balance of the bank accounts and does not take into account obligations accrued but unpaid. For instance, throughout this time there was an unpaid balance owed to SoundT[21] of over $1.0 Million. Furthermore, the debtor scheduled only $5.0 Million in claims while presently there are over $11 Million in claims filed.[22] Something does not add up, but solvency is not at issue for the purpose of this motion. It will wait for another day.

---

[19] Defendant Volodimyr Pigida's Answers to Plaintiff's Second Set of Interrogatories, No. 6; Rigby Dec., Exhibit G, page 72, line 1;

[20] Id.

[21] Defendant Lakeshore Enterprises Trust's Answers To Plaintiff's Second Set of Interrogatories, No. 4; Rigby Dec., Exhibit H, page 83, line 5. Defendant Marina Bondarenko 's (As Trustee of Lakeshore Enterprises Trust) Answers to Plaintiff's Second Set of Interrogatories No. 4; Rigby Dec., Exhibit I, page 95, line 6. Defendant Marina Bondarenko's Answers to Plaintiff's Second Set of Interrogatories, No. 4, Rigby Dec., Exhibit J, page 107, line 6. Defendant Volodimyr Pigida's (As Trustee For Lakeshore Enterprises Trust) Answers to Plaintiff's Second Set of Interrogatories, No.4; Rigby Dec., Exhibit K, page 119, line 5.

[22] Declaration of Nancy James In Support Of Motion For Partial Summary Judgment (hereinafter "James Dec."), para. 5-6.

**MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER OF PARTIAL SUMMARY JUDGMENT**
150326iMem   Page 6

THE RIGBY LAW FIRM
600 Stewart Str. #1908
Seattle, WA 98101
(206) 755-7600

Case 14-01248-MLB    Doc 40    Filed 04/30/15    Ent. 04/30/15 09:54:30    Pg. 6 of 15

## III. THE REPORT OF RICHARD GINNIS, CPA

Nancy James, as the trustee, engaged Richard Ginnis, CPA to conduct an avoidable transfers analysis of the debtor's records. He conducted his analysis and has prepared and signed a declaration which is filed in conjunction with this motion. Declaration of Richard Ginnis In Support Of Plaintiff's Motion for Summary Judgment (hereinafter "Ginnis Declaration").

Ginnis reviewed a number of records during the course of his analysis. Those records include:

*Debtor's Financial Statements on Quickbooks.

*Bank statements for the debtor and related parties.

*Billings from SoundT to Trend Sound.

*Schedules of Accounts Payable and Fees Paid to SoundT, from debtor's accounting records.

*Debtor's bankruptcy schedules. And,

*Claims Register.

Ginnis details his review of the financial records for the 90 day prepetition period on Schedule B-1. Therein he reviews the debtor's transfers to or on behalf of SoundT. He lists the transfers net of timely payments and the 90 day preference total is $882,860.67.

Ginnis details his review of the financial records for the period from July 31, 2013, the date he determined the debtor was insolvent, through the date of filing the petition for bankruptcy on Schedule C. He lists the transfers to or on behalf of SoundT during that time frame, net of timely payments, and the preference total is $1,449,419.67.

## IV LEGAL ANALYSIS

The trustee's authority to avoid preferential transfers is set forth at § 547(b) of the Bankruptcy Code:

**MEMORANDUM IN SUPPORT OF MOTION
FOR AN ORDER OF PARTIAL
SUMMARY JUDGMENT**
150326iMem   Page 7

THE RIGBY LAW FIRM
600 Stewart Str. #1908
Seattle, WA 98101
(206) 755-7600

Case 14-01248-MLB    Doc 40    Filed 04/30/15    Ent. 04/30/15 09:54:30    Pg. 7 of 15

"...the trustee may avoid any transfer of an interest of the debtor in property--

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made--

   (A) on or within 90 days before the date of the filing of the petition; or

   (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if--

   (A) the case were a case under chapter 7 of this title;

   (B) the transfer had not been made; and

   (C) such creditor received payment of such debt to the extent provided by the provisions of this title."

11 U.S.C. § 547(b).

The preference statute elements can be distilled to read: a bankruptcy trustee may recover property for the benefit of the estate if--

(A) there was a transfer of property of the debtor;

(B) to or for the benefit of a creditor;

(C) for or on account of an antecedent debt;

(D) made while the debtor was insolvent;

(E) made

   (1) on or within ninety days before the date of the filing of the debtor's bankruptcy petition: or

   (2) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

**MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER OF PARTIAL SUMMARY JUDGMENT**
150326iMem   Page 8

THE RIGBY LAW FIRM
600 Stewart Str. #1908
Seattle, WA 98101
(206) 755-7600

Case 14-01248-MLB   Doc 40   Filed 04/30/15   Ent. 04/30/15 09:54:30   Pg. 8 of 15

(F) that enables the creditor to receive more than he wold receive in a Chapter 7 liquidation of the estate.

*See, In re Kemp Pacific Fisheries, Inc.,* 16 F.3d 313, 315 (9th Cir. 1994*); In re Bullion Reserve of North America,* 836 F.2d 1214, 1216 *(*9th Cir. 1988).

A. <u>The transfers by the debtor to or for the benefit of SoundT were transfers of property of the debtor within the meaning of Section 547(b) of the Bankruptcy Code.</u>

The Ginnis Declaration at Exhibits B and C details a number of transfers including the issuance of checks, wire transfers, account transfers and cash transactions.

The Bankruptcy Code definition of the term "transfer" is as follows:

(54) The term "transfer" means -

    (A) the creation of a lien;

    (B) the retention of title as a security interest;

    (C) the foreclosure of a debtor's equity of redemption; or

    (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of **or parting with** -

        (i) property; or

        (ii) an interest in property.

11 U.S.C. § 101(54). (Emphasis added).

Payments by check are a direct form of parting with an interest in property, as are wire transfers, account transfers and cash transactions. While the term "property of the debtor" is not defined in the Bankruptcy Code, the Ninth Circuit has defined the term broadly. *Bullion Reserve, supra,* at 1217*; Elliot v. Frontier Properties,* 778 F.2d 1416, 1419 (9th Cir. 1985). "Generally, property belongs to the debtor for purposes of §547 if its transfer will deprive the bankruptcy estate of something which could otherwise be used to satisfy the claims of creditors."

**MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER OF PARTIAL SUMMARY JUDGMENT**
150326iMem   Page 9

THE RIGBY LAW FIRM
600 Stewart Str. #1908
Seattle, WA 98101
(206) 755-7600

Case 14-01248-MLB    Doc 40    Filed 04/30/15    Ent. 04/30/15 09:54:30    Pg. 9 of 15

*Bullion Reserve, supra,* at 1217. "In its simplest terms, property of the debtor may be said to be that which would have been property of the bankruptcy estate had the transfer not taken place. *In re Unicom Computer Corporation*, 13 F.3d 321 (9th Cir. 1994); *Begier v. I.R.S.*, 110 S. Ct. 2258 (1990). The transfers at issue herein qualify as transfers for the purposes of the preference statute. *See,* generally *Barnhill v. Johnson*, 112 S. Ct. 1386 (1992).

        .       B. <u>The transfers by the debtor were made to or for the benefit of the creditor within the meaning of 11U.S.C. § 547(b)(1).</u>

Under the Bankruptcy Code, the term "creditor" includes an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor...." 11 U.S.C. § 101(10). SoundT, therefore, is a creditor if it has a claim. Section 101(5) defines a claim. A claim is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured". 11 U.S.C. § 101(5). This provision adopts the broadest possible definition of a claim. *In re Johnston,* 149 B.R. 158, 161 (9th Cir. BAP 1992); *In re B-Bar Tavern Inc*., 506 B.R. 879 (*Bankr. D. Mont*., 2013).

The License Agreement found in the record at Rigby Dec. Exhibit L, page 127, evidences the claim SoundT had against the debtor. The Ginnis Declaration, Exhibit C shows the debtor's gross sales amount and 20% license commission owed by the debtor to SoundT, thus the amount of the debt is demonstrated. Moreover, SoundT issued 39 invoices to Trend Sound during this period.[23]

---

[23]Rigby Dec., Exhibit N.

**MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER OF PARTIAL SUMMARY JUDGMENT**
150326iMem   Page 10

THE RIGBY LAW FIRM
600 Stewart Str. #1908
Seattle, WA 98101
(206) 755-7600

Case 14-01248-MLB    Doc 40    Filed 04/30/15    Ent. 04/30/15 09:54:30    Pg. 10 of 15

The record is clear that the debtor, SoundT, Pigida and Bondarenko agreed that SoundT could "assign" its claim or parts thereof and in fact did so.[24] The Ginnis Declaration, Exhibits B and C, treats transfers to third parties *pursuant to assignments by SoundT*, such as the $1,454,448.11 to Lakeshore Enterprises, as being *for the benefit of SoundT*. "Asset transfers made to third parties in exchange for payment of a debtor's antecedent debts are transfers 'to or for the benefit of a creditor under section 547(b)(1)." *In re Food Catering & Housing, Inc.,* 971 F2d 396, 398 (9th Cir., 1992).

### C. The transfers were made on account of an antecedent debt owed by the debtor to the defendants within the meaning of 11 U.S.C. § 547(b)(1).

The term "antecedent" is not defined by the Bankruptcy Code. The Ninth Circuit Court, consequently, found occasion to analyze the concept of "antecedent" in the case *Matter of CHG International, Inc.,* 897 F.2d 1479, 1486 (9th Cir. 1990):

> Whether a debt is current or antecedent depends upon when it was incurred, a term which is not defined by the Bankruptcy Code. *In re Gold Coast Seed Co.,* 751 F.2d 1118, 1119 (9th Cir. 1985) (debt under forward contract to purchase seed from creditor was incurred upon shipment of the seed). This is generally when "the debtor obtains a property interest in the consideration exchanged giving rise to the debt." 4 *Collier on Bankruptcy* para. 547.38. The law of the state of Washington governs CHG's obligation under the promissory notes. *See Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 161, 91 L. Ed. 162, 67 S. Ct. 237 (1946). Under Washington law, the obligations of CHG to pay interest is fixed upon execution of the note. *Pedersen v. Fisher*, 139 Wash. 28, 32, 245 P. 30, 32 (1926). Thus the obligation to pay interest arose when CHG received the loan, not when the interest payments were made.
>
> The creditor in *In re Western World Funding, Inc.*, 54 Bankr. 470 (Bankr.D.Nev. 1985), advanced the same argument accepted by the district court in the instant case and by the Iowa Premium court: that its receipt of interest was not on account of an antecedent debt, but was incurred monthly when it became due. The Western World court rejected this argument, finding that the debt for principal and interest was incurred as soon as the promissory notes were signed and the

---

[24]Rigby Dec., Exhibit D, page 39, lines 11-end; Rigby Dec., Exhibit F, page 62.

**MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER OF PARTIAL SUMMARY JUDGMENT**
150326iMem   Page 11

THE RIGBY LAW FIRM
600 Stewart Str. #1908
Seattle, WA 98101
(206) 755-7600

Case 14-01248-MLB   Doc 40   Filed 04/30/15   Ent. 04/30/15 09:54:30   Pg. 11 of 15

funds transferred to the debtor. Id. at 477. Accord Barash, 658 F.2d at 509 (debt was incurred when consumer entered into installment loan agreement with creditors and not as each monthly payment fell due).

Debt is incurred when the debtor first becomes legally bound to pay it. Id. A debt and a claim, however, are co-extensive. In re *Bullion Reserve of North America*, 836 F.2d 1214, 1219 9th Cir. 1988). When a creditor has a claim against the debtor, the debtor owes a debt to the creditor. Id. A subsequent transfer, after the debt was incurred, is therefore on account of an antecedent debt. Id.

The invoices issued by SoundT to the debtor state payment was due upon receipt.[25] The License Agreement states the parties may agree upon the due date of the license payments.[26] Ginnis, therefore, treated payments made by the debtor, after the end of the month following the month in which the invoice were issued, to be late and thus preferential.[27] Clearly those payments made by the debtor, after the end of the month following the month in which the invoices were issued, were clearly payments on an antecedent debt. This conclusion is supported by the Ninth Circuit Court of Appeals in the case of In re Gulino, 779 F.2d 546 (9th Cir. 1985). By definition, a claim or debt is antecedent if a transfer is effectively delayed. Id. at 552. Essentially, if the exchange is not contemporaneous, its payment is for an antecedent debt.[28] The payments by the debtor were to or on account of the antecedent debt owed to SoundT. *See,*

---

[25]Rigby Dec., Exhibit N.

[26]Rigby Dec., Exhibit L, page 127, para. 4.

[27]Ginnis Dec., para. 9 and Exhibit C-2.

[28]Id.

150326iMem   Page 12

THE RIGBY LAW FIRM
600 Stewart Str. #1908
Seattle, WA 98101
(206) 755-7600

Case 14-01248-MLB    Doc 40    Filed 04/30/15    Ent. 04/30/15 09:54:30    Pg. 12 of 15

*Corn Exchange National Bank & Trust Co., v. Klauder Trustee in Bankruptcy,* 63 S. Ct. 679 (1943).

### (D) The transfers were made while the debtor was insolvent.

The trustee, however, reserves this issue for a future determination.

### (E)(1) The transfers were made on or within ninety days before the date of the filing of the debtor's bankruptcy petition.

The Ginnis Declaration, Exhibit B-1, sets forth the transactions in question within 90 days prior to the filing of the debtor's bankruptcy petition. Ginnis demonstrates that there are preferences in this time frame which total $882,860.67

### (E)(2) The transfers were made on or within one year before the date of the filing of the debtor's bankruptcy petition, and the transferees were insiders.

The Ginnis Declaration, Exhibits C-1 and C-2, sets forth the transactions in question after July 31, 2013, through the filing of the debtor's bankruptcy petition. July 31, 2013, is within one year of the date of the filing of the debtor's bankruptcy petition and is the date Ginnis determined that the debtor was insolvent. Ginnis demonstrates that there are preferences in this time frame which total $1,449,419.67.

SoundT is clearly an insider of the debtor. Pigida and Bondarenko are the members of SoundT.[29] Pigida holds at least 80% of the debtor and was at all times relevant its President. Bondarenko was at all times relevant the debtor's Vice President.[30]

---

[29] Rigby Dec., Exhibit M.

[30] SOFA 22b., Docket 1, page 35.

**MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER OF PARTIAL SUMMARY JUDGMENT**
150326iMem   Page 13

THE RIGBY LAW FIRM
600 Stewart Str. #1908
Seattle, WA 98101
(206) 755-7600

Case 14-01248-MLB    Doc 40    Filed 04/30/15    Ent. 04/30/15 09:54:30    Pg. 13 of 15

1   "Insider" is defined at 11 U.S.C. §101(31)(E) to include an "affiliate" or an insider of an
2   affiliate. An "affiliate" is defined at 11 U.S.C. §101(2)(B) to mean a corporation 20 percent or
3   more of whose outstanding stock is owned or controlled by an entity which owns or controls 20
4   percent of the outstanding stock of the other entity. Common ownership or control results in
5   "affiliate" status. *In re Petroleum Tank Lines, Inc.,* 10 B.R. 286 (*Bankr. W.D.N.Y. 1981*). This is
6   in accord with *Collier. Collier on Bankruptcy*, Sixteenth Edition, p. 101.02.
7   SoundT's insider status is the consequence of being owned and controlled by the same
8   two individuals who own and control the debtor–Pigida and Bondarenko--and authorizes the
9   trustee to look back one year under 11 U.S.C. §547(b)(4)(B).

<u>(F) The transfers in question enabled SoundT to receive more than it would receive in a Chapter 7 liquidation of the estate.</u>

12  The debtor listed $5,004,000 in debts on its bankruptcy schedules, although, presently
13  $11,418,779.50 in claims have been filed.[31] The trustee presently has $225,887.79 in her
14  accountand estimates that the remaining assets, not including the instant claim, will result in a
15  recovery of less than an additional $500,000.[32] She opines that this will not be a 100% payout
16  case.[33]
17  The Ninth Circuit ruled in the case of <u>In re Lewis Shurtleff, Inc.,</u> 778 F.2d 1416, 1421
18  (Ninth Cir. 1985), that any payment on account of an antecedent debt will allow the creditor to

---

[31]James Dec., para.5-6.

[32]Id.

[33]Id., at para. 8.

**MEMORANDUM IN SUPPORT OF MOTION
FOR AN ORDER OF PARTIAL
SUMMARY JUDGMENT**
150326iMem   Page 14

THE RIGBY LAW FIRM
600 Stewart Str. #1908
Seattle, WA 98101
(206) 755-7600

Case 14-01248-MLB    Doc 40    Filed 04/30/15    Ent. 04/30/15 09:54:30    Pg. 14 of 15

1 | receive more than it would under a Chapter 7 liquidation, unless the liquidation results in a 100%
2 | distribution.
3 |     The trustee has met this more than in a Chapter 7 requirement under the preference
4 | statute.

## V. SUMMARY

The trustee has proven each element under the preference statute, except solvency, and therefore judgment should issue accordingly.

DATED this 30th day of April, 2015.

THE RIGBY LAW FIRM

/S/ *James Rigby*

———————————————
James Rigby, WSBA #9658
Special Counsel for Plaintiff/Trustee

**MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER OF PARTIAL SUMMARY JUDGMENT**
150326iMem   Page 15

THE RIGBY LAW FIRM
600 Stewart Str. #1908
Seattle, WA 98101
(206) 755-7600

Case 14-01248-MLB    Doc 40    Filed 04/30/15    Ent. 04/30/15 09:54:30    Pg. 15 of 15